# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50388 | **DATE** | 8/21/2001 |
| **CASE TITLE** | Villalobos vs. Ogle County Probation Department et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' motions to dismiss and to stay discovery

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, defendants' motion to dismiss dated April 3, 2001, is granted; Counts II, III, and IV, as well as the official capacity claim against defendant Tornabene in Count I, are hereby dismissed. Defendants' motion to dismiss dated February 28, 2001, and its motion to stay discovery are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | AUG 22 2001 | 19 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 01 AUG 22 AM 11:26 | 8-22-01 date mailed notice | |
| /LC courtroom deputy's initials | | FILED-WD Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

FILED-WD
01 AUG 22 PM 12:05
CLERK
U.S. DISTRICT COURT

DOCKETED
AUG 22 200[ ]

ROMAN VILLALOBOS, a minor, )
By his Guardian and Next Friend, )
EDWARD VILLALOBOS, )
)
    Plaintiff, )
)
v. ) No. 00 C 50388
)
DONALD L. KINN, Chief Managing )
Officer of the OGLE COUNTY )
PROBATION DEPARTMENT, )
in his official capacity, OGLE )
COUNTY PROBATION DEPARTMENT, and )
EMILY E. TORNABENE, in her )
individual and official capacity, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff, Roman Villalobos, by his guardian and next friend, Edward Villalobos, has filed a four-count second-amended complaint based on 42 U.S.C. § 1983 and state law against defendants, Emily Tornabene, in both her official and individual capacity as an Ogle County Juvenile Probation Officer, Donald Kinn, in his official capacity as the Chief Managing Officer of the Ogle County Probation Department, and the Ogle County Probation Department ("Department"). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331, 1367, 1391(b)(2). Before the court is the Department's motion to dismiss Counts II and IV and Kinn's motion to dismiss Count III for lack of subject matter

jurisdiction and failure to state a claim, filed on April 3, 2001,[1] pursuant to Federal Rules of Civil Procedure 12(b)(1), (6), and their motion to stay discovery.

## II. ANALYSIS

While in the Department's custody in November 1999, Villalobos alleges Tornabene sexually abused him. In Counts II and IV, brought pursuant to 42 U.S.C. § 1983, Villalobos claims the Department violated his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments because it lacked adequate safeguards to protect minors from such "unfettered contact and removal" and "developed and maintained policies or customs" regarding the inadequate and improper supervision and training of its probation officers. He seeks both injunctive relief (Count II) and monetary damages (Count IV) against the Department for these alleged violations. Count III is a supplemental state law claim against Kinn for negligently hiring and retaining Tornabene as a probation officer.

### A. Section 1983 Claims (Counts II and IV)

#### 1. The Department

As the Department has raised the Eleventh Amendment as a

---

[1] These two defendants actually filed an earlier motion to dismiss on February 28, 2001, seeking to dismiss Villalobos' first-amended complaint for want of prosecution. Because Villalobos subsequently filed his second-amended complaint, the court denies the February 28 motion to dismiss as moot.

-2-

defense to Counts II and IV, the court must determine whether the Department is a state agency, in which case it is entitled to Eleventh Amendment immunity, or a local unit of government, in which case it is not. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984) (regardless of relief sought, Eleventh Amendment bars claim against state and its agencies);[2] Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (counties and other political subdivisions of state not protected by Eleventh Amendment). Because the answer to this question depends upon the nature of the entity created by state law, the court will examine Illinois' statutory characterization of the Department, the state's oversight and control over the Department's fiscal affairs, and the extent of state funding. See Mt. Healthy, 429 U.S. at 280; Kashani v. Purdue Univ., 813 F.2d 843, 845 (7th Cir.), cert.

---

[2] In light of Pennhurst, Villalobos clearly has it wrong when he says in his brief that the Eleventh Amendment does not prohibit suits against the state for injunctive relief. What he apparently has in mind instead is the doctrine of Ex Parte Young, 209 U.S. 123 (1908), which permits an injunction against a state official. However, even assuming Villalobos were to use Ex Parte Young to avoid all the Eleventh Amendment problems discussed infra by naming the appropriate official rather than the Department for his prospective relief claim in Count II, that count would likely still have to be dismissed. It appears from the parties' briefs that Villalobos is no longer detained by the Department (whether he has been transferred to another facility or released altogether is unclear). If this is in fact the case, his claim for injunctive relief would be moot because he has not brought his suit as a class action or alleged it is likely he would be put back in the Department. See Houston v. Sheahan, 62 F.3d 902 (7th Cir. 1995) (per curiam), abrogated on other grounds by, Haley v. Gross, 86 F.3d 630 (7th Cir. 1996).

denied, 484 U.S. 846 (1987). The most significant considerations are the Department's ability to independently raise funds and whether a judgment against the Department would effectively run against the state by being paid out of the state treasury. See Mt. Healthy, 429 U.S. at 280; Edelman v. Jordan, 415 U.S. 651, 663 (1974); Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 732 (7th Cir. 1994); Mackey v. Stanton, 586 F.2d 1126, 1130 (7th Cir. 1978), cert. denied, 444 U.S. 882 (1979). After balancing all of these factors, the court finds the Department is entitled to Eleventh Amendment immunity.

No state statute definitively identifies the Department as a state or county agency, so the first factor is of little use. Cf. Cannon v. University of Health Sci./The Chicago Med. Sch., 710 F.2d 351, 356 (7th Cir. 1983) (state statute referred to university as state agency). As for the second factor, Illinois law reveals the state exerts broad control over local probation departments. By statute, each county is required to maintain a probation department, subject to the oversight of the Illinois Supreme Court, the Supreme Court's Probation Services Division, and the Chief Judge of the judicial circuit in which the probation department sits. See 705 ILL. COMP. STAT. 405/6-1(2); 730 ILL. COMP. STAT. 110/15(1), (2)(a). Among other things, the Probation Services Division, which is part of the Administrative Office of the Illinois Courts (the administrative body of the Illinois Supreme Court), see Chief Judge of the Eighteenth

Judicial Circuit v. Illinois State Labor Relations Bd., 726
N.E.2d 147, 149 (Ill. App. Ct. 2000), establishes qualifications
for probation officers, monitors and evaluates all programs
operated by a probation department, and establishes training
standards for probation department personnel. See 730 ILL. COMP.
STAT. 110/15(1). A probation department is required to comply
with the standards set down by the Probation Services Division,
regardless of whether it applies for state funding. See 705 ILL.
COMP. STAT. 405/6-6(4); 730 ILL. COMP. STAT. 110/15(2)(a), (3), (6),
(10).

State control over local probation departments is reinforced
through the state's oversight of department budgets. See
Kashani, 813 F.2d at 846 (fact that budget of Purdue University
is submitted to state for approval suggests it is state agency).
In Illinois, each probation department must submit an annual plan
and apply for basic funds to the Illinois Supreme Court. See 730
ILL. COMP. STAT. 110/15(2)(a), (3), (6). The annual plan is
reviewed by the Probation Services Division and no probation
department may receive reimbursement from the state for probation
services not provided for in a budget approved by the Supreme
Court. See id. §§ 110/15(1)(i), (3).

Individual counties and the state share the expense of
paying for local probation departments. In a general sense, each
county bears the initial financial burden of maintaining a
probation department. See 705 ILL. COMP. STAT. 405/6-5(1), 6-7;

730 ILL. COMP. STAT. 110/14. Counties are also solely responsible for things such as capital and space costs, fringe benefits, and equipment. See 730 ILL. COMP. STAT. 110/15(11). However, the state takes much of the brunt for the compensation of probation department personnel and a probation department's services in the form of reimbursement programs. The state reimburses counties for the salaries of chief managing officers, supervisors, and other probation officers, as well as travel expenses associated with such officers. See 705 ILL. COMP. STAT. 405/6-6; 730 ILL. COMP. STAT. 110/15(4)(a)-(e). Additional funding is provided for individualized services and programs (which must also be reviewed and approved by the Illinois Supreme Court), see 730 ILL. COMP. STAT. 110/15(5), 110/16(3)-(5), as well as basic probation services, see id. § 110/15(9).

A probation department has a limited ability to independently raise funds by charging probationers for their oversight, although these fees are ultimately deposited into a "probation and court services fund" established by the respective county treasurer. See generally id. § 110/15.1. And even this fund is subject to the control and oversight of the Chief Judge in the circuit and the Supreme Court. See id.

Given the significant funds paid by the state to the Department, the state's extensive control and oversight (via the state's judiciary) over not only the policies and standards of the Department, but its fiscal affairs as well, and a limited

-6-

power to independently raise funds, the court finds the Department acts on behalf of the state rather than a local subdivision of the state. In similar circumstances, the Illinois Supreme Court has held the "fact that counties pay the salaries and expenses of circuit court clerks does not make the office of circuit court clerk a county office." Drury v. County of McLean, 433 N.E.2d 666, 669 (Ill. 1982). The court thus concludes any judgment against the Department would effectively run against the state and the Department is protected by the Eleventh Amendment. The Department's motion is accordingly granted as to Counts II and IV.

### 2. Kinn in his official capacity

To the extent Villalobos pleads either of these same § 1983 claims against Kinn in his official capacity (or would seek to amend his complaint to do so), the court finds the Eleventh Amendment bars them as well. See McMillian v. Monroe County, Alabama, 520 U.S. 781, 785 n.2 (1997) (official capacity suit is the same as a suit against the entity of which the officer is an agent); DeGenova v. Sheriff of DuPage County, 209 F.3d 973, 975 n.1 (7th Cir. 2000) (same). This requires the court to determine if Kinn, in his capacity as Chief Managing Officer of the Department, is in fact a state official. To do so, the court must decide first whether he is a "final policymaker" with respect to his ability to hire and retain subordinate probation officers; if so, the question then turns on whether he exercises

this final policymaking authority on behalf of the state or the county. See McMillian, 520 U.S. at 785-86; DeGenova, 209 F.3d at 975-76; see also Brokaw v. Mercer County, 235 F.3d 1000, 1009 n.3 (7th Cir. 2000) (raising but not addressing issue of whether Illinois probation officers act on behalf of state or local subdivision of state). Once again, this entire inquiry depends on an analysis of state law. See McMillian, 520 U.S. at 786; DeGenova, 209 F.3d at 975.

In Illinois, the Chief Judge of each circuit has the power to appoint the Chief Probation Officer[3] and "all other probation officers for his or her circuit." 730 ILL. COMP. STAT. 110/15(2)(b). At the same time, the Chief Judge may delegate the power to appoint all subordinate probation officers to the Chief Probation Officer, although his authority remains "subject to the general administrative and supervisory authority of" the Chief Judge. Id. § 110/13. It is the Chief Probation Officer's duty to "supervise and control the work of all" subordinate probation officers, who "serve at the pleasure of the director or chief probation officer." Id. The Chief Probation Officer also retains the right, in his own judgment, to discharge and impose other disciplinary sanctions upon subordinate officers. See id. Although neither party has presented evidence on whether the Chief Judge of Ogle County has authorized Kinn to hire the

---

[3] Though not entirely clear, it appears the statute uses "Chief Probation Officer" interchangeably with "chief managing officer." See 730 ILL. COMP. STAT. 110/15(2)(b).

Department's subordinate probation officers, an Illinois appellate court has interpreted these statutes to mean (albeit in the context of a labor dispute) that the "decision to appoint and remove probation officers is completely within the discretion of the Chief Judge." Chief Judge of the Eighteenth Judicial Circuit, 726 N.E.2d at 149; see also Witter v. Cook County Comm'rs, 100 N.E. 148, 150 (Ill. 1912). Given this authority, the court has serious doubts whether Kinn possesses final policymaking authority over the Department's hiring decisions. However, even assuming he does have such authority, the court finds he would be exercising it on behalf of the state rather than the county.

All local probation department hiring decisions are funneled through Illinois' judiciary, beginning with the Illinois Supreme Court, then the Supreme Court's Probation Services Division, and, finally, the Chief Judge of the circuit in which the probation department is located. By statute, all probation officer appointments must be made from "lists of qualified applicants supplied by the Supreme Court." 730 ILL. COMP. STAT. 110/15(2)(b). Furthermore, all candidates for probation officer positions "must apply with both the Chief Judge of the circuit and the Supreme Court" and every county probation department must "abide by the personnel qualifications and hiring procedures promulgated by the Supreme Court." Id.; 705 ILL. COMP. STAT. 405/6-6(4). Local probation departments are also subject to the "hiring, promotion,

and training" qualifications for probation personnel promulgated by the Probation Services Division. 730 ILL. COMP. STAT. 110/15(1)(a).

Even more revealing, probation officers are statutorily defined as "judicial employees designated on a circuit wide or county basis." 730 ILL. COMP. STAT. 110/9b(3). As a long line of precedent from various Illinois authorities make clear, probation officers are *not* county officers but are, rather, officers of the court which appoint them. See People ex rel. Callahan v. Whealan, 190 N.E. 698, 701 (Ill. 1934); Witter, 100 N.E. at 150; People v. Kavinsky, 414 N.E.2d 1206, 1214 (Ill. App. Ct. 1980); 1991 Ill. Atty. Gen. Op. 41, available at 1991 WL 495496, at *5 (1991). Like the clerk of a circuit court, a probation officer is a "nonjudicial member of the judicial branch of State government and not a county officer." Drury, 433 N.E.2d at 669. Thus, whatever final authority Kinn might have over the hiring and supervision of probation department personnel (again, assuming he has any at all), the court concludes that it derives directly from the judicial branch of state government, so that Kinn acts as an agent of the state, not the county, when making those types of decisions.[4]

---

[4] Although the Department has not raised the issue, it seems unavoidable to the court that this same analysis effectively disposes of the official capacity claim against Tornabene in Count I. In fact, there is even less reason (perhaps no reason) to think a subordinate probation officer such as Tornabene wields any sort of final policymaking authority. In addition, she is specifically designated as a judicial employee

-10-

## B. State Law Claim (Count III)

Like the Department, Kinn has also moved to dismiss the state law negligence claim against him in his official capacity (Count III) on the basis that he is protected by the Eleventh Amendment. The Supreme Court has held that state law claims brought under a federal court's supplemental jurisdiction against a state official in his official capacity are barred by the Eleventh Amendment. See Pennhurst, 465 U.S. at 121. As the court has already decided Kinn acts on behalf of the state in his capacity as Chief Managing Officer of the Department, Villalobos must bring this claim in state court. See Shegog v. Board of Educ. of the City of Chicago, 194 F.3d 836, 837-38 (7th Cir. 1999); Burgess v. Ryan, 996 F.2d 180, 184-85 (7th Cir. 1993), cert. denied, 510 U.S. 1092 (1994).

## III. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted and Counts II, III, and IV of Villalobos' second-amended complaint are hereby dismissed. The court also dismisses the official capacity claim against Tornabene in Count I. Defendants' motion to stay discovery is denied as moot.

---

by statute and would thus be a state officer when acting in her capacity as a probation officer. Because the court may raise an Eleventh Amendment defense sua sponte, see Higgins v. Mississippi, 217 F.3d 951, 954 (7th Cir. 2000), the court dismisses the official capacity claim against Tornabene.

E N T E R:

*[Signature: Philip G. Reinhard]*

PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT


DATED: August 21, 2001